## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 24-23132-Civ-BECERRA/TORRES

LUIGI CRUZ,

     *Plaintiff*,

v.

MIAMI-DADE COUNTY, et al.,

     *Defendants*.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS

This cause comes before the Court on Defendants', Miami-Dade County ("the County"), Eddie Hall ("Officer Hall"), Travis Donaldson ("Officer Donaldson"), and Santiago Alonso ("Officer Alonso), Motion to Dismiss five claims of Plaintiff, Luigi Cruz's Second Amended Complaint. [D.E. 38]. Plaintiff has filed a response, to which Defendants have replied. The Motion, therefore, is ripe for disposition.[1] After careful review of the briefing and relevant authorities, and for the reasons set forth below, we recommend that the Motion be **GRANTED in part** and **DENIED in part**.

---

[1] On November 7, 2024, the Honorable Jacqueline Becerra referred all pre-trial matters to the Undersigned Magistrate Judge for disposition. [D.E. 25].

## *I.    BACKGROUND*

This case arises out of the alleged use of excessive force by County corrections officers towards Plaintiff. Plaintiff alleges the following facts that are assumed to be true for purposes of this motion.  While in custody for pre-trial detention at Metro West Detention Center, he was subjected to a "shakedown." Prior to lining up for the shakedown, Plaintiff asked an officer for permission to use the restroom. While in line to use the restroom, co-Defendant Officer Lumpkins asked Plaintiff why he was standing in the restroom line. Plaintiff responded that another officer had given him permission to do so. While Plaintiff was providing this response, Officer Lumpkin repeatedly told him to "shut the fuck up."

Then, Officer Lumpkins punched Plaintiff while Plaintiff was handcuffed. Another officer (Officer Johnson) rushed over, and Officer Lumpkin punched Plaintiff again, on the left side of his face. Officer Johnson then held Plaintiff's arms as Officer Lumpkin continued to punch Plaintiff. Next, Officer Lumpkins threw Plaintiff to the ground, and Officer Lumpkins and Officer Johnson continued punching him. During this beating, three other officers (Officers Hall, Donaldson, and Alonso) looked on, but did not interfere.

As a result of his injuries, Plaintiff was brought to the North Clinic in Metro West Detention Center, where he remained for three days. To recover for his purported injuries, Plaintiff brought this lawsuit against the County, Officer Lumpkins, Officer Johnson, Officer Hall, Officer Alonso, and Officer Donaldson. In

the now-Second Amended Complaint [D.E. 35], Plaintiff alleges the following eight

claims:

- Count I: Excessive Force under 42 U.S.C. § 1983 (against Officers Lumpkins and Johnson);
- Count II: Failure to Intervene under 42 U.S.C. § 1983 (against Officers Lumpkins, Hall, Donaldson, Johnson, and Alonso);
- Count III: Failure to Protect under 42 U.S.C. § 1983 (against the County);
- Count IV: Battery (against the County and Officers Lumpkins and Johnson);
- Count V: Assault (against the County and Officers Lumpkins and Johnson);
- Count VI: Negligent Retention (against the County);
- Count VII: Negligent Training (against the County); and
- Count VIII: *Monell* Liability under 42 U.S.C. § 1983 (against the County).

In the pending Motion, Defendants seek to dismiss Counts II, III, VI, VII, and

VIII of the operative Complaint.

## II.   APPLICABLE LAW AND PRINCIPLES

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim

for failure to state a claim upon which relief can be granted.  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory

statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  *Id*.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id*.; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010)

(setting forth the plausibility standard).  "Factual allegations must be enough to raise

a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012).  The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## III.   ANALYSIS

We will address in turn the claims that Defendants seek to dismiss: the failure to intervene claim, the failure to protect and *Monell* claims, the negligent retention claim, and the negligent training claim.

### A. *Failure to Intervene*

Plaintiff alleges that Officers Hall, Donaldson, and Alonso watched Plaintiff's beating and failed to act. Specifically, Plaintiff alleges that "Officers Hall, Donaldson, and Alonso … saw Officer Lumpkins and Johnson use excessive force against Mr. Cruz." [D.E. 35 at ¶ 55]. And while the observing officers "had a realistic opportunity to stop Officer Lumpkins' and Johnson's use of excessive force," and were "in a position to intervene," the observing officers "failed to intervene and failed to take reasonable steps to prevent [the] use of excessive force on Plaintiff." [*Id*. at ¶ 57]. Plaintiff further alleges that Officer Lumpkins was equipped to stop Officer Johnson's use of force, and vice-versa.

"[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable …." *Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir. 1998); *see also Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000) ("We have previously said that an officer can be liable for failing to intervene when another officer uses excessive force."). Further, "for an officer to be liable for failing to stop police brutality, the officer must be 'in a position to intervene.'" *Id*. at 1407 (quoting *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996)).

Defendants argue that "merely being present at the scene of an alleged use of excessive force" is not an adequate factual predicate for a § 1983 claim. Rather, Defendants aver that Plaintiffs are required to allege facts to show the officers had the time and opportunity to intervene. Because, according to Defendants, the

operative Complaint lacks that factual support, Plaintiff's claim is too conclusory and should be dismissed.

In response, Plaintiff argues that the operative Complaint does contain sufficient factual support. Specifically, Plaintiff points to allegations that all the officers saw the beating, were nearby the scene, observed the excessive force, had enough time to intervene, and chose not to. Nothing more, Plaintiff contends, is required at this preliminary stage of the case.

We agree with Plaintiff that, accepting his allegations as true and resolving reasonable inferences in his favor, his failure to intervene claim is not overly conclusory. Plaintiff alleges that each of the officers "saw" the excessive force [D.E. 35 at ¶ 55], "had a realistic opportunity to stop" the force because "they were standing nearby and had sufficient time," [*id*. at ¶ 57], and yet "failed to take reasonable steps to prevent" the force. [*Id*.]. Further, the operative Complaint indicates that the force was not, for example, one or two punches, but a series of punches that involved a second officer coming over and holding Plaintiff down.

Accordingly, the operative Complaint belies Defendants' objection that Plaintiff lacks factual support for his claim. Before the benefit of discovery and evidence, we can reasonably infer that the officers, "standing nearby" and with time to intervene, were "in a position to intervene." *See Edwards*, 66 F.3d at 1298 (denying defendant's motion for summary judgment because "[t]here [was] no dispute that Officer Lovett was present for the entire attack, and taking Edwards's account as true, he made no effort to intervene and stop the ongoing constitutional violation");

*Detris v. Coats*, 523 F. App'x 612, 616–17 (11th Cir. 2013) (reversing the district court's dismissal of a failure to intervene claim because "Detris's Complaint alleged that Deputies Campbell and Key stood by and watched while White, Frost, and Tournai beat him. Viewed in the light most favorable to Detris, Campbell and Key were in a position to intervene because White, Frost, and Tournai continued to assault Detris after he was pinned on the floor and begging for them to stop. Under the facts alleged, Campbell and Key could have sought to intervene or could have told the other officers to stop once Detris was pinned to the floor. As such, Detris pled enough facts to state a plausible claim for relief."); *Blake v. Carter*, No. 3:23CV8553/LAC/ZCB, 2024 WL 4244105, at *5 (N.D. Fla. Apr. 11, 2024), *report and recommendation adopted*, 2024 WL 4246679 (N.D. Fla. Aug. 8, 2024) ("According to Plaintiff's allegations, there were multiple officers in his cell during the forced cell extraction when the excessive force was used, but none of them intervened to stop the excessive force. As set forth above, Plaintiff has plausibly stated an excessive force claim. And accepting Plaintiff's allegations as true and liberally construing them, Plaintiff has stated a plausible failure to intervene claim. Thus, Defendants' motion to dismiss the failure to intervene claim should be denied.").

Thus, accepting Plaintiff's allegations as true and drawing reasonable inferences in his favor, we find that Plaintiff has plausibly alleged a claim for failure

to intervene. We recommend, therefore, that Defendants' Motion be denied as to Count II.[2]

### B. *Failure to Protect and* Monell *Claims*

Next, Defendants argue that Plaintiff has not plausibly alleged either of his § 1983 claims against the County—failure to protect (Count III) and a more general *Monell* claim (Count VIII). Those claims, argue Defendants, fail to satisfy the contours of *Monell* because they fail to plausibly allege a custom, fail to plausibly allege causation, and fail to adequately identify a policymaker.

Plaintiff, meanwhile, alleges that the County maintains several unconstitutional customs. One such custom is "to tolerate the wrongful actions by officers … such as the use of excessive force," which causes the officers to believe such force "is permissible." [D.E. 35 at ¶ 33]. Further, Plaintiff alleges that the County "allow[s] correction officer 'shake down teams' to have free reign to conduct

---

[2]     The individual Defendants did not directly raise a qualified immunity challenge to the failure to intervene claim.  Given the allegations of the operative complaint, no such challenge can be raised at this point in the case.  *See, e.g., Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (plaintiff's claim that he underwent protracted beating by one officer after being handcuffed while another officer was present permits an inference that one engaged in the beating and the other failed to intervene); *cf. Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. 2018) (qualified immunity precluded failure to intervene claim where the whole excessive force incident lasted only a few seconds and evolved rapidly once plaintiff was seized and handcuffed, where no other officer had a plausible opportunity to intervene).

shakedowns without need or purpose and to use excessive force while conducting shakedowns ....” [*Id.* at ¶ 34].

We must first, then, address whether Plaintiff has plausibly alleged a custom under *Monell*. Liability of a municipality “may be predicated upon a showing that a government employee's unconstitutional action ‘implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,’ or is ‘visited pursuant to governmental “custom” even though such custom has not received formal approval through the body's official decision-making channels.’” *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) (quoting *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690–91 (1978)).

To support his customs’ allegations, Plaintiff points to prior incidents, including: (1) a report that their exists a video of Officer Lumpkins beating an inmate on April 12, 2019; (2) an Internal Affairs Investigation Report 19-214 related to that excessive force; (3) another pending case (20-cv-21969-CMA); (4) an Internal Affairs Investigation Report 20-638 related to Officer Johnson; (5) a 2023 NBC News Report indicating that no staff has been terminated despite 1,185 use of force incidents having been reported; and (6) a 2011 D.O.J. investigation which found a “pattern and practice of constitutional violations in the correctional facilities operated by MDCR.” [*Id.* at ¶ 36]. Plaintiff argues that this support, working together and separately, renders plausible his allegations that the County has a deliberate indifference (i.e., an unconstitutional custom) towards officers’ use of excessive force, particularly in the shakedown setting.

Conversely, Defendants argue that these examples do not adequately allege a widespread practice or custom. As to the two prior incidents of excessive force, Defendants posit that the two accusations are not alleged to be factually-similar constitutional deprivations. And further, even if those incidents were found to be constitutional violations, two incidents do not establish a pattern or practice. As for the DOJ and NBC News reports, Defendants argue that findings of force in a prison setting is "nothing new," and is not evidence that detainees'/prisoners' constitutional rights have been violated. And as to the pending lawsuit, Defendants argue that complaints and allegations standing alone do not equal a constitutional deprivation.

Even accepting Plaintiff's allegations as true and drawing reasonable inferences in his favor, we find that he has failed to plausibly allege a custom of exhibiting deliberate indifference towards excessive force. For one, while Plaintiff identifies one prior incident as to each officer, the factual support falls short of alleging a plausible claim. The mere fact—even if true—that force has occurred in the past does not mean that the County maintains a custom of permitting excessive force under *Monell*. Rather, Plaintiff must allege that those prior incidents were factually analogous, were in fact constitutional violations, and were not sufficiently addressed by the County. Simply alleging that the officers may have used excessive force in the past will not do. *See Jackson v. Miami-Dade Cnty.*, No. 18-20665-CIV, 2018 WL 5787247, at *11 (S.D. Fla. Nov. 5, 2018) ("Although the Plaintiff alleges generally that Defendant Slimack, who has been an officer for twenty years, has been the subject of sixteen past complaints, at least ten of which involve the excessive use of force, the

Complaint provides no factual information regarding those complaints, and thus this allegation is also insufficient to support a plausible claim for relief. In sum, to establish the custom and policy of excessive force necessary to proceed against the County, the Plaintiff must include at least some factual detail sufficient to establish the plausibility of the conclusory allegations of the alleged unconstitutional policy. Therefore, the undersigned recommends that Count I be dismissed with leave to amend.").

Here, the operative Complaint tells us only that "Defendant Lumpkins was caught on camera beating an inmate"; an "Internal Affairs Investigation Report" was created as to Officer Lumpkins; and an "Internal Affairs Investigation Report" was created as to Officer Johnson for which we are provided no other details. At no point, however, does Plaintiff allege that those prior incidents involved constitutional violations, let alone ones factually similar to Plaintiff's ostensible constitutional deprivation.

As for the Officer Johnson report, Plaintiff does not even allege what the report is related to or why it is relevant to his claim. And as to the Officer Lumpkin report, Plaintiff does not allege that (1) the incident was a constitutional deprivation, and/or (2) that it was factually similar to Plaintiff's circumstances. The fact that, over the course of their careers with the County, Officers Lumpkin and Johnson each have one investigative report (that may or may not be similar to the case at hand), does not plausibly allege a widespread custom under *Monell*. To even approach a plausible *Monell* claim, Plaintiff would have to allege how and why those incidents were

11

factually-similar constitutional deprivations, and would likely need to provide several more similar instances.

The operative Complaint lacks that requisite detail and support. And to be clear, this is not a negligence claim—this is an attempt to impose direct liability onto the municipality. To that drastic end, we cannot accept Plaintiff's proffered inference that, just because each officer had a prior investigative report and certain news sources reported on the County, the County maintains a custom promoting or permitting unconstitutional excessive force. *See Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 673 (11th Cir. 2016) ("And, even broadly construing the amended complaint, he has cited only two incidences of alleged excessive force—his arrest and a homicide involving the same set of officers who arrested him. These allegations do not show that the County had a 'longstanding and widespread practice' of encouraging excessive force. Nor do they show that the alleged custom was the 'moving force' behind Officer Giordano kicking Marantes's head and body."); *Gaviria v. Guerra*, No. 17-23490-CIV, 2018 WL 1876124, at *6 (S.D. Fla. Apr. 19, 2018) (quoting *Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015)) ("Plaintiff fails to allege a widespread practice of excessive force by MDPD officers as evidenced by multiple prior incidents. Plaintiff's only references to incidents of excessive force separate from the incident at issue are vague allegations Guerra and Alvarez 'ha[ve] a history of reports of excessive use of force incidents causing injuries and violations of citizens' rights, of which Miami-Dade County was aware,' and 'ha[ve] a propensity for misconduct, including excessive use of force against members of the

public.' These allegations fall well short of demonstrating the use of excessive force by MDPD officers 'constitute[s] the sort of occurrence that is obvious, flagrant, rampant and of continued duration that would establish a causal connection between actions of the supervising official and the alleged constitutional violation.'"); *Whitaker*, 126 F. Supp. 3d at 1321 (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)) ("Third, even assuming these four isolated shootings in 2012 were deemed to be unconstitutional uses of excessive force—an allegation not contained in the Complaint—the Court does not accept Plaintiffs' legal conclusion that the prior shootings constitute the sort of occurrence that is 'obvious, flagrant, rampant and of continued duration' that would establish a 'causal connection between actions of the supervising official and the alleged constitutional deprivation.'").

Accordingly, because Plaintiff has not plausibly alleged that the County maintains a "widespread custom or practice" of condoning excessive force, particularly in the "shakedown" setting, nor has Plaintiff otherwise plausibly alleged the County's liability, we recommend that Counts III and VIII be dismissed without prejudice. *See Bouyer v. Rounsoville*, No. CIV.A. 108CV0856RWS, 2008 WL 2787484, at *3–4 (N.D. Ga. July 15, 2008) (dismissing *Monell* claim where the plaintiff alleged that the city "maintained a system of review of police conduct which is so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable excessive use of force, criminal trespass, false arrest, false imprisonments and malicious prosecutions by police officers" because "Plaintiff's conclusory allegations regarding the City's policy fail to satisfy the pleading requirements under *Twombly*"); *Blossom*

*v. City of St. Petersburg*, No. 8:14-CV-3099-T-17-TB, 2015 WL 3493999, at *4 (M.D. Fla. June 3, 2015) ("Plaintiff must allege more than bare conclusions to demonstrate the City of St. Petersburg's: 1) training program is or was inadequate; 2) training program can justifiably be said to represent 'city policy;' and 3) this city policy resulted in a violation of constitutional rights. Therefore, the current Complaint lacks facts necessary to show the City of St. Petersburg demonstrated deliberate indifference and a failure to properly train its officers.").

### C. *Negligent Retention*

Next, Defendants move to dismiss Plaintiff's negligent retention claim. In support, Defendants argue that Plaintiff alleges that the officers were acting within the scope of employment when they used excessive force on Plaintiff. The problem, per Defendants, is that under Florida law, a negligent retention requires an employee to being acting outside the scope of his employment. Accordingly, the claim should be dismissed.

In response, Plaintiff argues that Florida law permits negligent retention claims where the employee is acting within the scope of his employment. Further, Plaintiff avers that he pleads this claim in the alternative; i.e., while Plaintiff alleges in other portions of the operative Complaint that the officers were acting "reckless" and beyond their job duties, he argues that, in the event a factfinder concludes that the officers were acting within the scope of their employment, his negligent retention claim can survive.

As an initial matter, we agree with Defendants that Florida law requires a negligent-retention plaintiff to plead that the employee(s) was acting outside the scope of his employment. Indeed, "[u]nlike the theory of respondeat superior where an employer faces liability for an employee's acts committed within the course or scope of employment, the tort of negligent hiring or retention under Florida law 'allows for recovery against an employer for acts of an employee committed outside the scope and course of employment.'" *Belizaire v. City of Miami*, 944 F. Supp. 2d 1204, 1214 (S.D. Fla. 2013) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. 2d DCA 1986)).

Florida's Third District Court of Appeal has also crystallized this principle. *See Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989) ("By its very nature, an action for negligent retention involves acts which are not within the course and scope of employment and allows recovery even when an employer is not vicariously liable under the doctrine of respondeat superior."). The court's opinion in *Watson* is sensible, in that it distinguished a negligent retention claim from a respondeat superior claim based on this critical distinguishing factor. And *Watson* has strong footing in the Florida Supreme Court, which has defined negligent retention to encompass "the negligence of the master in knowingly keeping a dangerous servant on the premises and have held the master liable for the acts of his servant *outside the scope of his authority* ...." *Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954) (emphasis added) ("Other jurisdictions have considered the negligence of the master in knowingly keeping a dangerous servant on the premises and have held

15

the master liable for the acts of his servant outside the scope of his authority if trespassing on the rights of those legally on the master's premises whether the servant acted wilfully, maliciously or negligently. The doctrine of these cases was approved in Restatement of Torts, § 317. It seems to be a sound rule and should be applied in this case.").

Having found that Florida law is settled, we now turn to Plaintiff's allegations. In the operative Complaint, Plaintiff alleges that it was unreasonable for the County to retain Officers Lumpkin and Johnson, or at least not provide training or retraining to the officers, because the County "knew or should have known" about the officers' prior uses of excessive force. [D.E. 35 at ¶¶ 98–100]. Throughout the operative Complaint, Plaintiff alleges that, "[a]t all times relevant to this action," Officers Lumpkin and Johnson were "acting within the course and scope of [their] employment and under color of state law …." [*Id.* at ¶¶ 8–9; 45].

The only time that Plaintiff alleges that the officers acted "in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiff's rights" is within Plaintiff's assault and battery claims. [*Id.* at ¶¶ 80, 91]. But only within those specific claims does Plaintiff allege that anything occurred outside the scope of the officers' employment. Those allegations are not incorporated into Plaintiff's negligent retention claim. Rather, the sentiments from his general allegations that the officers, "[a]t all times relevant to this action" acted within the scope of their employment, are incorporated into Plaintiff's negligent retention claim. [*Id.* at ¶¶ 8–9].

16

Consequently, we have no support to find that Plaintiff's negligent retention claim is meant to be pleaded in the alternative to a finding that the officers were acting outside the scope of their employment. There is no indication in Plaintiff's negligent retention claim that the officers were acting outside the scope of their employment.

Accordingly, because Plaintiff does not plead that Officers Lumpkin and Johnson acted outside the scope of their employment when they engaged in the acts that support Plaintiff's negligent retention claim, Plaintiff's claim fails under Florida law. We thus recommend that, on this score, Defendant's Motion be granted and Plaintiff's negligent retention be dismissed without prejudice. *See Whitaker*, 126 F. Supp. 3d at 1329 (quoting *Belizaire v. City of Miami*, 944 F. Supp. 2d 1204, 1215 (S.D. Fla. 2013)) ("Regardless of these pleading deficiencies, the claim is fundamentally flawed because 'Florida law ties liability under the theory of negligent retention to acts committed outside the scope of employment[.] Plaintiff alleges that the officers were acting within the scope of their employment."); *Yule v. Ocean Reef Cmty. Ass'n*, No. 19-10138-CIV, 2020 WL 3051505, at *10 (S.D. Fla. June 8, 2020) (collecting cases) ("Courts in this District repeatedly dismiss negligent retention and supervision claims where a plaintiff fails to allege that the employee's tortious conduct was 'outside the scope' of their job duties.").

### D. *Negligent Training*

Lastly, Defendants move to dismiss Plaintiff's negligent training claim on grounds of sovereign immunity. In support, Defendants argue that how the County

trains its police officers, and what subject matter the County chooses to include in that training, is a discretionary function and is therefore barred by sovereign immunity.

In response, Plaintiff argues that it challenges more than just what the County chose to include in its training programs. And further, whether this claim encompasses only discretionary functions, argues Plaintiff, is a fact-laden determination not properly decided before discovery.

"In the context of a negligence claim, Florida courts have held that sovereign immunity extends to 'discretionary' governmental functions, but not to acts that are 'operational in nature.'" *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 996 (N.D. Fla. 2019) (citing *Kaisner v. Kolb*, 543 So. 2d 732, 736 (Fla. 1989)). "Claims for negligent training are typically barred by sovereign immunity because a 'decision regarding how to train ... officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning.'" *Hemmings v. Jenne*, No. 10-61126-CIV-COHN, 2010 WL 4005333, at *6 (S.D. Fla. Oct. 12, 2010) (quoting *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001)). And to plead a viable negligent training claim, a plaintiff "must show that [the municipality] was negligent in the implementation or operation of the training program"; a plaintiff "cannot merely challenge the content of the program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).

Here, Plaintiff alleges that the County failed to properly train on "de-escalation techniques" and failed to instruct officers "to use a reasonable amount of force, instead of brutally battering Plaintiff." [D.E. 35 at ¶ 112]. These allegations clearly target the content (i.e., de-escalation and non-excessive force) that the County omitted from its training—not the operational procedures. Accordingly, the allegations directly target the County's discretionary functions. *See Hemmings*, 2010 WL 4005333, at *6 ("Ms. Hemmings claims the Sheriff was negligent because he failed to train Deputy Ferber and other employees. The Sheriff's decisions regarding training are discretionary in that they are policy and planning questions, and not mere operational decisions."); *see also Gualtieri v. Bogle*, 343 So. 3d 1267, 1276 (Fla. 2d DCA 2022) (reversing denial of motion to dismiss negligent training claim filed together with excessive force claim; "Here, the pertinent allegations in count three clearly relate to the Sheriff's decisions of how to train his deputies and what subject matter to include in said training. These alleged deficiencies in the Sheriff's training of his deputies involve discretionary, planning-level functions for which the Sheriff is entitled to sovereign immunity.").

Consequently, because the County is entitled to sovereign immunity in the face of these allegations, we recommend that Plaintiff's negligent training claim be dismissed. *See Mercado*, 407 F.3d at 1162 ("Because Mercado only challenges the content of the program, not the way in which the program was implemented, Orlando is entitled to sovereign immunity with respect to this claim."); *Lewis*, 260 F.3d at 1266 ("Lewis does not challenge the implementation or operation of the City's police

training program as it relates to the officers involved in the shooting, but rather Lewis challenges the City's policy decisions regarding what to include in the training of its police officers. A city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning. Because Lewis challenges the reasonableness of basic policy decisions made by the City, the 'discretionary' function exception to the waiver of sovereign immunity applies and her claim is barred."); *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1118 (11th Cir. 2005) (affirming the dismissal of a negligent training claim because there, "as in *Lewis*, the challenged actions are the Sheriff's decisions regarding 'how to train its [corrections] officers and what subject matter to include in the training.'").

## IV.   CONCLUSION

For the reasons set forth above, we recommend that Defendants' Motion [D.E. 38] be **GRANTED in part** and **DENIED in part**:

   **A.** Defendants' Motion should be granted as to Count III (failure to protect), and the claim should be dismissed without prejudice;

   **B.** Defendants' Motion should be granted as to Count VI (negligent retention) and the claim should be dismissed without prejudice;

   **C.** Defendants' Motion should be granted as to Count VII (negligent training) and the claim should be dismissed without prejudice; and

   **D.** Defendants' Motion should be granted as to Count VIII (*Monell* liability), and the claim should be dismissed without prejudice.

**E.** Defendants' Motion should be denied in all other respects.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers at Miami, Florida this 29th day of April, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge